GENERAL TRUCK DRIVERS, CHAUF-FEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 5, Petitioner-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Petitioner,

and

Union Tank Car Company, Intervenor.

No. 26336

Summary Calendar.

United States Court of Appeals Fifth Circuit.

May 15, 1969.

William C. Bradley, Baker, La., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., John F. LeBus, Director, Region 15, N.L.R.B., New Orleans, La., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate

Gen. Counsel, Richard S. Rodin, Baruch A. Fellner, Attys., for the National Labor Relations Board.

Andrew C. Partee, Jr., Kullman, Lang, Keenan, Inman & Bee, New Orleans, La., for Union Tank Car Co.

Before BROWN, Chief Judge, THORNBERRY and MORGAN, Circuit Judges.

PER CURIAM:

This is another union unfair labor practice case, companion to Nos. 26337 and 26451 decided today, 410 F.2d 1344, brought before the Court on the petition of the Union to review and on cross-application of the Board to enforce its order.[1] Briefly, the Board found that the Union violated Section 8(b) (7) (B) and 8(b) (4) (i) (ii) (C) of the Act by picketing Union Tank Car Company within twelve months after a valid Board election and after the certification of another union, with an object of forcing the Company to recognize or bargain with the Union as the representative of the Company's employees.[2] The Union does not deny that the picketing had a recognitional or bargaining object within the meaning of the statute, but argues that it was not responsible for the picket line and the action of Emile Verbois,[3] assistant business agent for the Union and formerly shop steward at the Company plant.

We are convinced that substantial evidence in the record as a whole supports the Board's findings that the Union, by virtue of the conduct of Verbois and others acting in its behalf, was responsible for the picket line in violation of the Act, Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456;[4] and we therefore enforce the Board's order.

Enforced.

1. Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5th Cir. 1969, 409 F.2d 804, Part I.

2. The Board decision and order are reported at 171 NLRB No. 165. The Board's order requires the Union to cease and desist from "picketing, or causing to be picketed, or threatening to picket [the Company]' for a period of 1 year from January 29, 1968, and for the period during which another labor organization is the duly certified representative of the employees of said Company" for objects proscribed by Section 8(b) (7) and 8(b) (4) (C) of the Act. Furthermore, the Board's order requires the Union to cease and desist from picketing the Company for these same objects, where there has been a valid election within the preceding 12 months under Section 9(c) of the Act which the Union did not win, or while another labor organization is the duly certified representative of the employees of the Company. Affirmatively, the order requires the Union to post appropriate notices.

3. The Union asserts in its brief that "the Board erred in finding that Emile D. Verbois and Thomas Kyle were agents of Local 5." The Board, however, reversing the Trial Examiner, held that "the evidence does not establish that Kyle was also an agent of [the Union]". (Emphasis added)

4. The picket at the plant was maintained from May 2, 1967 until January 26, 1968, when it was enjoined. The period of the statutory violation commenced January 3, 1968, the date Local 270 was certified as the exclusive bargaining representative of the Company's employees. Although the Union's name was removed from the sign on December 27, the pickets themselves, including Verbois and Reeves of the Union's negotiating committee, remained substantially the same so as to continue the Union's responsibility. Additionally, the picket was financially supported by contributions of Union members solicited by Union agents.

As for Verbois, the record shows that he was business agent of the Union and had been the only signatory on behalf of the Union on the expired contract with the Company. The Union points to no evidence of a termination of the prior relationship between it and Verbois. Indeed, it was Verbois who solicited and collected money from the employees to maintain the picket line. Thus it is clear that he was acting as an agent of the Union.